**In Re Anonymous No. 61 D.B. 83**

Disciplinary Board Docket No. 61 D.B. 83.

HAMMERMAN, *Member,* January 31, 1985— Pursuant to Rule 208 (d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## 1. HISTORY OF PROCEEDINGS

The instant petition for discipline was filed on November 1, 1983 alleging a course of conduct in violation of the Disciplinary Rules charging respondent with 20 separate violations of the Code of Professional Responsibility, arising˖ out of seven complaints filed by seven different clients.

The petition for discipline charged respondent with professional misconduct in violation of the Code of Professional Responsibility to wit:

A. D.R. 1-102(A)(4) dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation.

B. D.R. 6-101(A)(3) dealing with conduct involving neglect of a legal matter entrusted to a lawyer.

C. D.R. 7-101(A)(1) dealing with a lawyer intentionally failing to seek the lawful objectives of his client through reasonably available means.

D. D.R. 7-101(A)(2) dealing with a lawyer intentionally failing to carry out a contract of employment.

E. D.R. 9-102(B)(4) dealing with a lawyer promptly delivering to a client as requested by the client properties in the possession of the lawyer which the client is entitled to receive.

F. D.R. 2-110(B)(4) dealing with mandatory withdrawal from employment by a lawyer who is discharged by his client.

G. D.R. 1-102(A)(1) dealing with a lawyer violating a Disciplinary Rule.

H. D.R. 1-102(A)(6) dealing with a lawyer engaging in conduct which adversely reflects on his fitness to practice law.

I. D.R. 3-101(B) dealing with a lawyer practicing in a jurisdiction where doing so is in violation of regulations of the profession in that jurisdiction.

J. D.R. 7-102(A)(3) dealing with a lawyer intentionally prejudicing or damaging his client during the course of the professional relationship.

K. D.R. 2-110(A)(3) dealing with a lawyer promptly refunding any part of a fee paid in advance that has not been earned upon his withdrawal from employment.

Respondent did not file an answer. The matter was assigned to Disciplinary Hearing Committee

[    ] (hereinafter referred to as hearing committee) of which [    ] is chairperson, and [    ], are members, on November 29, 1983 and a pre-hearing conference was held on January 5, 1984 and the hearing held on March 8, 1984.

The hearing committee filed its report on October 15, 1984 in which they unanimously found respondent's conduct to have been violative of D.R. 6-101(A)(3); 2-110(A)(4); 2-110(A)(3); 2-110(B)(4); 217(c); 217(d); 1-102(A)(1); 1-102(A)(4); 1-102(A)(6); 3-101(B); 7-101(A)(1); 7-101(A)(2); and 7-101(A)(3), and recommended that he be suspended for a period of five years. No briefs or exceptions were filed and the matter was referred to the undersigned for review.

## II. FINDINGS OF FACT

Respondent is an attorney admitted to the Supreme Court of Pennsylvania and is a part-time lawyer employed by the defender's office in [    ] County of the Commonwealth. Respondent was appointed by the court to represent [A] under the PCHA on May 27, 1981, and upon a hearing held on October 26, relief was denied. Although [A] wrote respondent discharging him as his attorney, he filed a notice of appeal on [A]'s behalf. Respondent failed to reply to [A]'s inquiries relative his withdrawal or the filing of a brief and as of the date of the hearing, never pursued the appeal. Disciplinary counsel withdrew the complaint embodied in the second charge.

Respondent was retained by a [B] on November 4, 1982 in connection with child support proceedings, which were scheduled for the next day. Respondent secured a delay of the deposition on behalf of [B] and made arrangements for [B] to pay the outstanding arrearages, which the client failed to do. While

respondent testified that [B] fired him on November 11, 1982 there was no written confirmation and no further action was taken by respondent. Thereafter, [B] made several attempts to contact respondent and secure certain documents which respondent failed or refused to return.

Respondent has been suspended from the practice of law in Pennsylvania by Supreme Court order dated August 22, 1977 and not reinstated until November 13, 1979 yet on April 29, 1979 he was consulted by one [C] concerning an accident. Respondent did not advise him that he was suspended and otherwise not legally qualified to accept the case. Respondent introduced [C] to [D], an attorney in the suite in which respondent maintained office space. [D] denied that he was brought in or managed the matter and respondent admits that he did assume responsibility for the case and that he neglected the same. A writ of summons was filed but never served and the statute of limitations expired in the case. [C] made attempts to reach respondent by phone but respondent did not return their calls and did not advise them of the running of the statute of limitations. Thereafter, [C] employed [E], Esq. with respect to the accident case and after his numerous attempts to meet with respondent remained unsatisfied, a malpractice lawsuit was instituted on behalf of the [C] naming respondent and [D] defendants.

In August 1981, respondent was employed by one [F] to represent him on a contingent fee basis in an action against [G] and a default judgment was obtained against defendant. [G] then appealed to the arbitration division and respondent filed a complaint, upon which defendant's preliminary objections were sustained and respondent filed an amended complaint. Thereafter, respondent took no

further action, was unavailable for phone calls and did not even respond to the D.B.-7 letter.

Respondent agreed to represent [H] in her paternity action and attended a pre-trial conference with Judge [I] on May 13, 1982. Because respondent failed to appear for jury selection and trial on August 4, 1982 after several calls by court personnel, a non-suit was entered. Thereafter respondent was directed to file post-trial motions but he failed to do so and on August 23, 1982 the paternity suit was dismissed. [H] learned of the dismissal from her DPA caseworker in late December 1982. On May 15, 1983, a form D.B.-7 letter was mailed to respondent but he failed to respond or take any curative action.

Respondent agreed to represent [J] in a lawsuit against his former employer, [K] Cable Corporation for improper termination of employment. Although [J] executed a 40 percent contingent fee agreement, respondent failed to take any action relative the [J] claim. After phone calls which were not returned, [J] claimed relief from the Disciplinary Board and a form D.B.-7 letter was sent to respondent who failed to either answer same or take any curative action.

Respondent agreed to represent [L] in a proceeding to have his Pennsylvania pharmacy license reinstated and received $500 advance on his legal fees. Respondent took no action on [L's] behalf and failed to return any phone calls by the client. In February 1983, respondent assured [L] that a petition had been filed with the state and that a hearing would take place sometime in April of 1983. In fact, respondent never filed any petition with the state board and insisted that he was on top of the situation. Thereafter, respondent misrepresented to [L] that a hearing would take place. Eventually, [L] secured another attorney who requested the file from

the respondent and finally received the file. The monies paid to respondent were never returned to the client, nor did respondent answer petitioner's form D.B.-7 letter.

## III. CONCLUSIONS OF LAW

The hearing committee recommended that respondent be suspended from the practice of law for a period of not less than five years during which he is to totally withdraw from the profession and disassociate himself from the practice of law. In view of the many violations arising out of the enumerated separate cases, this board member agrees with this recommendation.

## IV. DISCUSSION

The hearing committee considered all the charges and found that they indicate a common pattern. Respondent accepts employment and then never pursues the client's interest. He continues to neglect matters which he has undertaken and never responds to entreaties from the clients to perform or withdraw. Respondent admitted that he is a defendant in a lawsuit by the [C]; that he is not represented by counsel in that matter; and that he did not answer the complaint which caused a default judgment to be entered against him.

Respondent offered no testimony in mitigation of his history of neglect in the matters before the hearing committee or the matters before these under consideration in which he received information admonitions, public censure and the prior suspension. He states on page 180:

. . . "I knew that ultimately we had to end up here, but I just found myself unable to do anything.

If I knew the reason, we would not be here. I just don't know."

## V. RECOMMENDATION

The hearing committee recommended a five years' suspension with the condition that he have no association with the legal profession in any shape or manner. While Chief Disciplinary Counsel requests disbarment, it was the majority vote by members of the Disciplinary Board that the recommendation of the hearing committee be confirmed.

Messrs. McDonald, Elliott, Keck and Daniels and Mrs. Neuman dissent and would recommend disbarment. Mr. Brown abstained.

## DISSENTING OPINION

KECK, *Member,* December 17, 1984—The Disciplinary Board has concurred in the recommendation of the hearing committee that respondent be suspended for a period of five years. I would recommend that respondent be disbarred. There is no substantive difference between a five-year suspension and disbarment. There are, however, in my view different connotations. Suspension implies, I think, the expectation that the suspended attorney will be rehabilitated and restored to practice upon expiration of the suspension. Disbarment on the other hand implies that the lawyer is unfit to practice and will be readmitted only at such time as he demonstrates after searching inquiry that he is fit to be readmitted to the Bar.

This respondent has been found guilty of 18 violations of the Disciplinary Rules in seven different charges, all involving neglect, also of two violations of Enforcement Rule 217 which forbids suspended attorneys to engage in the practice of law. Further

he ignored D.B.-7 letters sent to him by the Office of Disciplinary Counsel.

The public have the right to expect that the lawyer whom they engage will pursue the client's interests in timely fashion and will be honest and forthright in dealing with the client.

The public's confidence in the Bar will be enhanced if they know that the Supreme Court has disbarred those who consistently and egregiously violate the Disciplinary Rules that govern lawyer-client relationships.

Mr. Daniels, Mr. McDonald and Mrs. Neuman join in the dissent.

## CONCURRING AND DISSENTING OPINION

To the Honorable Chief Justice and
  Justices of the Supreme Court of Pennsylvania

ELLIOTT, *Vice Chairman,* January 23, 1985—By a majority vote, this Disciplinary Board of the Supreme Court of Pennsylvania found that respondent [   ] committed 20 separate violations of the Code of Professional Responsibility, arising out of seven complaints by seven different clients. Those violations are enumerated in the majority opinion and I fully concur in those findings. A seven member majority recommended that respondent be suspended from the practice of law for five years. The board's recommendation is woefully inadequate.

As the board found, respondent's conduct follows a consistent pattern of accepting employment and then never pursuing the client's interests. The majority noted that respondent offered no testimony in mitigation of his history of neglect in the matters before the hearing committee or the matters before these under consideration in which he received informal admonitions, public censure and the prior

suspension. He states on page 180 of the transcript before the hearing committee:

". . . I knew that ultimately we had to end up here, but I just found myself unable to do anything. If I knew the reason, we would not be here. I just don't know."

In light of these undisputed facts of record, I dissent from the majority recommendation of a five year suspension and would recommend disbarment for the same reasons proffered by the board in In re: Anonymous No. 51 D.B. 80, 19 D.&C.3d 769, 773 (1981):

"There is no basis upon which to conclude that respondent's conduct will be different in the future. In fact, the record indicates that respondent's pattern of conduct is very likely to repeat in the future to the detriment of unwitting clients. The board concludes that respondent presents one of the rare instances where the board's duty to protect the public from totally incompetent and irresponsible practitioners warrants the imposition of the harshest sanction."

As in In re: Anonymous No. 51 D.B. 80, respondent should be disbarred. Chairman Robert C. Daniels and Board Members Nancy M. Neuman, Winfield Keck and James D. McDonald, Jr. join in this dissent.

Wherefore, the undersigned member respectfully requests your honorable court not to accept the recommendation of the board relative to the imposition of discipline and to order the disbarment of respondent.

## ORDER

NIX, *C.J.*, And now, this June 11, 1985, there having been entered by this court on February 28, 1985, a rule to show cause why respondent should

458

not be disbarred and no response thereto having been filed, it is ordered that the rule be and is hereby made absolute; and it is further ordered that [respondent], be and he is disbarred from the Bar of this Commonwealth; he shall comply with all the provisions of Rule 217, Pa.R.D.E.; and he shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice McDermott did not participate in this matter.